No. 25-14197

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MARK A. GYETVAY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Middle District of Florida, No. 2:21-cr-00083-JNE-NPM

## OPENING BRIEF OF DEFENDANT-APPELLANT MARK A. GYETVAY

Kevin M. Downing
LAW OFFICES OF KEVIN DOWNING
601 New Jersey Ave NW, Suite 260
Washington, D.C. 20001
(202) 754-1982
kevindowning@downinglaw.com

Matthew J. Mueller
*Counsel of Record*
FOGARTY MUELLER HARRIS PLLC
501 E. Kennedy Blvd., Suite 1030
Tampa, Florida 33602
(813) 682-1730
matt@fmhlegal.com

*Counsel for Defendant-Appellant Mark A. Gyetvay*

*United States v. Gyetvay*, No. 25-14197

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In compliance with Federal Rules of Appellate Procedure 26.1 and 28(a)(1) and Eleventh Circuit Rule 28-1(b), Defendant-Appellant Mark A. Gyetvay submits this Certificate of Interested Persons and Corporate Disclosure Statement.  No party to this appeal is a corporation.  The parties, persons, and entities with an interest in the outcome of this case are listed below in alphabetical order.

- Bagley, Katie, Counsel for United States
- Barber, Thomas P., United States District Judge for the Middle District of Florida
- Carbone, Patricia, Counsel for Gyetvay
- Carbone Law, P.A., Counsel for Gyetvay
- Downing, Kevin M., Counsel for Gyetvay
- Duva, A. Tysen, Counsel for United States
- Ericksen, Joan N., Senior United States District Court Judge for the District of Minnesota
- Fogarty Mueller Harris, PLLC, Counsel for Gyetvay
- Frazier, Douglas N., United States Magistrate Judge for the Middle District of Florida
- Goldberg, Stuart M., Counsel for United States
- Gyetvay, Mark A., Defendant-Appellant
- Hayes-Deats, Caleb, Counsel for Gyetvay
- Hodge, Jennifer, Counsel for United States

*United States v. Gyetvay*, No. 25-14197

- Hubbert, David A., Counsel for United States

- Knapp, Gregory S., Counsel for United States

- Lamken, Jeffrey A., Counsel for Gyetvay

- Law Offices of Kevin Downing, Counsel for Gyetvay

- Law Office of Nicholas R. Metcalf, Counsel for Gyetvay

- Lyons, Samuel Robert, Counsel for United States

- Metcalf, Nicholas R., Counsel for Gyetvay

- Mizell, Nicholas P., United States Magistrate Judge for the Middle District of Florida

- MoloLamken LLP, Counsel for Gyetvay

- Mueller, Matthew J., Counsel for Gyetvay

- Myers, Jackson A., Counsel for Gyetvay

- Nitz, Eric R., Counsel for Gyetvay

- Okula, Jr., Stanley J., Counsel for United States

- Rubin, Nathaniel F., Counsel for Gyetvay

- Schneider, Kevin, Counsel for United States

- Syverson, Joseph B., Counsel for United States

- United States of America, Plaintiff-Appellee

- Zisserson, David, Counsel for United States

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is necessary and will assist the Court in resolving this appeal. The record is complex, and the appeal raises important questions regarding the proper scope and application of the Mandatory Victims Restitution Act ("MVRA").

# TABLE OF CONTENTS

Introduction ................................................................................................. 1

Jurisdictional Statement ............................................................................. 2

Statement of Issues .................................................................................... 3

Statement of the Case ................................................................................ 3

   I.   Legal and Regulatory Background ................................................... 3

      A.   Voluntary Disclosure of Past Noncompliance ............................ 3

   II.  Factual Background ........................................................................... 4

      A.   Gyetvay Guides Novatek Through an IPO and Earns Stock ......... 4

      B.   Gyetvay's IRS Filings ................................................................ 5

   III. Proceedings Below ........................................................................... 6

      A.   The Verdict and Post-Trial Motions .......................................... 6

      B.   Sentencing ................................................................................. 7

      C.   The First Appeal ........................................................................ 8

      D.   Resentencing ............................................................................. 8

Summary of Argument ............................................................................... 9

Argument .................................................................................................. 10

   I.   The MVRA Does Not Apply Because Count 12 Was Not an Offense
      Against Property ............................................................................. 13

      A.   The District Court Could Not Rely on Findings of Fact in
          the PSR to Support the Restitution Order ................................. 13

      B.   The PSR Did Not Make Findings Necessary to Support
          Restitution ............................................................................... 14

      C.   The District Court's Findings Were Not Supported by the
          Evidence ................................................................................... 15

   II.  Unassessed Title 26 Penalties Cannot Form the Basis For Restitution
      Under the MVRA .......................................................................... 17

   III. Conclusion ..................................................................................... 22

## TABLE OF AUTHORITIES

### Cases

*MSP Recovery Claims, Series LLC v. Hanover Ins. Co.*,
   995 F.3d 1289 (11th Cir. 2021) ..........................................................13

*Padda v. Comm'r*,
   T.C. Memo 2020-154 (2020) ...............................................................24

*Topsnik v. Comm'r*,
   143 T.C. 240 (2014).............................................................................23

*United States v. Bane*,
   720 F.3d 818 (11th Cir. 2013) ............................................................19

*United States v. Blake*,
   868 F.3d 960 (11th Cir. 2017) ............................................................10

*United States v. Boyle*,
   469 U.S. 241 (1985)...................................................................... 21, 23

*United States v. Cavallo*,
   790 F.3d 1202 (11th Cir. 2015) ..................................................... 11, 19

*United States v. CF & I Fabricators of Utah, Inc.*,
   518 U.S. 213 (1996)...................................................................... 12, 20

*United States v. Collins*,
   854 F.3d 1324 (11th Cir. 2017) ................................................... passim

*United States v. Goldman*,
   953 F.3d 1213 (11th Cir. 2020) ..................................................... 11, 19

*United States v. Gyetvay*,
   149 F.4th 1213 (11th Cir. 2025) ......................................................8, 10

*United States v. Huff*,
   509 F.3d 1240 (11th Cir. 2010) ..................................................... 11, 19

*United States v. Jones*,
   289 F.3d 1260 (11th Cir. 2002) ..........................................................15

*United States v. Martin*,
  803 F.3d 581 (11th Cir. 2015) ...................................................................... 18, 19

*United States v. Owanikin*,
  769 F. App'x 896 (11th Cir. 2019) ...................................................................18

*Vick v. Phinney*,
  414 F.2d 444 (5th Cir. 1969) ..............................................................................21

## Statutory Provisions

18 U.S.C. § 1001 .........................................................................................................7

18 U.S.C. § 3231 .........................................................................................................2

18 U.S.C. § 3663A(b)(1) ............................................................................................7

18 U.S.C. § 3663A(c)(1)(A)(ii) ............................................................... 3, 7, 9, 10

18 U.S.C. § 3663A(c)(1)(B) ............................................................................. 10, 17

18 U.S.C. § 3664(e) .................................................................................................13

26 U.S.C. § 6212 .......................................................................................................21

26 U.S.C. § 6213 .......................................................................................................21

26 U.S.C. § 6501 .......................................................................................................20

26 U.S.C. § 6601(a) ..................................................................................................18

26 U.S.C. § 6651(a) ..................................................................................................18

26 U.S.C. § 6651(b) ..................................................................................................20

26 U.S.C. § 6651(d) ..................................................................................................20

26 U.S.C. § 6651(f) ...................................................................................................20

26 U.S.C. § 6651(h) ..................................................................................................20

26 U.S.C. § 6751 .......................................................................................................21

26 U.S.C. § 7201 ................................................................................................6, 20

26 U.S.C. § 7203 ................................................................. 6, 7, 19, 20

26 U.S.C. § 7206(2) ...........................................................................6

28 U.S.C. § 1291 ................................................................................3

31 U.S.C. §5314 ................................................................................7

31 U.S.C. §5322(a) ...........................................................................7

## United States Sentencing Guidelines

U.S.S.G. §2B1.1 Application Note 3 (Nov. 2021) ......................... 19, 20

U.S.S.G. §2T1.1 Application Note 1 (Nov. 2021) ..............................20

## Legislative History

1996 U.S.C.C.A.N. 924 ....................................................................18

S. Rep. No. 104-179 (1995) .............................................................18

S. Rep. No. 97-494 (1982) ...............................................................20

## Other Authorities

*Black's Law Dictionary* (11th ed. 2019) ..................................... 11, 12, 17

Elissa Hart-Mahan & Hannah Cook, *Restitution in Criminal Tax
   Cases: Common Pitfalls and Practical Strategies*, 71 Dep't of Just.
   J. of Fed. L. & Prac. 1 (2023) ...............................................19

I.R.M. §20.1.1.2 (2017) ...................................................................19

I.R.M. §20.1.1.3 (2020) ...................................................................21

I.R.M. §20.1.2.1.1 (2025) ................................................................19

v

## **INTRODUCTION**

For years, Mark Gyetvay was a financial executive at an oil-and-gas development company in Russia. An American citizen, he was required to file U.S. tax returns. In 2015, Gyetvay voluntarily disclosed that he had failed to do so—and that he had not previously reported certain foreign accounts. He also timely filed a Foreign Bank Account Report ("FBAR"), disclosing three foreign accounts containing most of his foreign funds, but he omitted a fourth, smaller account. For his efforts, the government rewarded him with a fifteen-count indictment charging a range of tax and related crimes. He was charged not merely with failure to file required returns and disclosures, but also with falsely stating that his prior failures were not "willful."

The jury refused to convict on all but four counts. Following an appeal, this Court vacated the only two tax counts of conviction (Counts 10 and 11) affirmed Gyetvay's convictions on the two remaining counts (Counts 12 and 13), vacated his sentence, and remanded for resentencing. On remand, the district court resentenced Gyetvay to 70 months of imprisonment and ordered $4,021,074 in restitution. Doc. 338.

At resentencing, the district court ordered Gyetvay to pay $4 million in restitution consisting of civil tax penalties under Title 26 that had never been assessed by the Internal Revenue Service. The district court order imposing

1

unassessed civil Title 26 penalties as restitution violated the purpose and principles underlying restitution.  Under the Mandatory Victims Restitution Act ("MVRA"), restitution is for restorative purposes.  It is intended to return the victim to the status quo and make the victim whole.  Thus, unassessed civil penalties—which are non-compensatory penalties found in Title 26—cannot form the basis for an order of restitution under Title 18's MVRA.

Furthermore, at resentencing, Gyetvay objected to the paragraphs of the PSR that related to restitution, including the assertion that Gyetvay's false statement regarding willfulness was made "for the purpose of avoiding the payment of penalties."  The district court again awarded $4 million in restitution on the basis that the false statement was made "for the purpose of avoiding the payment of penalties" despite a glaring lack of evidence in the record.  That finding was not supported by the evidence presented at trial or any other proceeding.  There was no evidence that Gyetvay's statement—that his previous failures to file were not "willful"—was made with the requisite intent to deprive the government of property.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231.  It entered final judgment on November 21, 2025, Dkt.338.  Gyetvay filed a notice of appeal from that judgment on November 26, 2025, Dkt.341.  On January 21, 2026, Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, and 15 of the Second Superseding Indictment were dismissed with

prejudice by the district court. Dkt.347. This Court has jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF ISSUES

1.    Whether Gyetvay's sentence must be vacated because the district court erroneously determined that the MVRA applied and that the false-statement conviction was an "offense against property" under 18 U.S.C. §3663A(c)(1)(A)(ii).

2.    Whether Gyetvay's sentence must be vacated because the district court erroneously concluded that unassessed civil Title 26 penalties can be included in a restitution order under the MVRA.

## STATEMENT OF THE CASE

### I.    LEGAL AND REGULATORY BACKGROUND

#### A.    Voluntary Disclosure of Past Noncompliance

IRS programs permit taxpayers to voluntarily disclose prior noncompliance, including unreported foreign accounts. In 2015, the IRS offered the Offshore Voluntary Disclosure Program ("OVDP") and the Streamlined Foreign Offshore Procedures ("SFOP"). Dkt.265 at 197:11-22; Dkt.264 at 213:15-16.

OVDP encouraged disclosures by taxpayers who had willfully used unreported foreign accounts to evade taxes. Dkt.265 at 185:7-15. Taxpayers had to submit eight years of tax returns, bank statements, and calculation worksheets. Dkt.265 at 189:4-13, 193:20-194:6. When processing OVDP disclosures, the IRS could assess penalties for individual violations, Dkt.265 at 190:3-191:10, or a

3

miscellaneous "offshore penalty" based on the aggregate balance of undisclosed accounts, Dkt.265 at 191:11-192:7.  Taxpayers who completed OVDP received assurances against criminal prosecution.  Dkt.265 at 186:24-187:19.

The IRS established SFOP as an alternative for taxpayers who failed to file tax returns or FBARs but were not "willful."  Dkt.265 at 197:18-199:2.  Taxpayers participating in the SFOP had to submit three years of tax returns and six years of FBARs.  Dkt.265 at 207:22-208:2.  They also had to pay all taxes owed plus interest, but they were not assessed Title 26 failure to timely file and failure to timely pay penalties.  Dkt.265 at 208:3-16.

## II.    FACTUAL BACKGROUND

### A.    Gyetvay Guides Novatek Through an IPO and Earns Stock

Gyetvay is an accountant and financial executive.  He was a partner at PricewaterhouseCoopers's Moscow office until 2003, when he became CFO of Novatek, a Russian natural gas company.  Dkt.264 at 11:2-13:17.

Gyetvay guided Novatek through its 2005 IPO.  Dkt.263 at 164:18-165:4.  As a result, he received $9.35 million and 7,287,134 shares of Novatek stock.  GX211.  The $9.35 million was deposited in a Swiss bank account held in the name of Opotiki Marketing Ltd.  GX65A; GX213; GX225.  The stock was placed in a Swiss securities account held in the name of Felicis Commercial Corp.  GX212; GX67A.

4

### B.    Gyetvay's IRS Filings

Gyetvay did not file timely tax returns or FBARs from 2008 to 2013.  GX45; GX62.  In May 2014, Gyetvay's Swiss bank notified him that, under a program established by the U.S. and Swiss governments, it would disclose anonymized information about accounts held directly or indirectly for U.S. clients.  GX65G; Dkt.266 at 208:16-209:7.  Gyetvay subsequently retained counsel, consented to the bank's disclosures, and began to make his own voluntary disclosures based on the advice of his counsel.  Dkt.266 at 209:14-210:1; GX65H; GX65L.

#### 1.    *The SFOP Submission*

Gyetvay's counsel, Anaford AG, was a Swiss law firm led by Matthew Ledvina, a U.S. attorney.  Dkt.266 at 209:14-210:1; GX65H; Dkt.267 at 37:9-13. While evidence at trial showed that Anaford and Ledvina encouraged Gyetvay to make a disclosure through SFOP, there was no evidence submitted at trial that Anaford provided Gyetvay with a comparison between the OVDP and SFOP programs or ever counseled him regarding the benefits of choosing one program over the other.  GX73; GX65H; Dkt.266 at 209:19-210:1.  Ledvina drafted a memo explaining that, in his opinion, Gyetvay's past noncompliance did not meet the legal standard for willfulness.  Dkt.267 at 4:15-6:3.  The memo thus concluded that Gyetvay qualified for the SFOP.

Accordingly, Anaford prepared Gyetvay's SFOP submission. GX50A; Dkt.265 at 5:24-6:13. When doing so, it drafted a statement explaining that Gyetvay's past noncompliance had been non-willful, such that he qualified for the SFOP. GX73. Gyetvay approved the statement "subject to agreement with [Ledvina] on the wording." *Id.*

Anaford submitted Gyetvay's SFOP filing together with the non-willfulness statement and a payment of $4,649,609.77 in taxes and interest. GX50A. The SFOP submission included tax returns for 2011-2013 and FBARs for 2008-2013. GX50A; GX56-62.

## III. PROCEEDINGS BELOW

The Grand Jury returned an Indictment in September 2021, Dkt.3, and a Second Superseding Indictment in May 2022, Dkt.101, totaling fifteen counts.

### A. The Verdict and Post-Trial Motions

The jury did not return a verdict on ten of the fifteen counts: Counts 1 through 3, which charged aiding or assisting in the preparation of false tax returns for 2006 through 2008 in violation of 26 U.S.C. § 7206(2); Counts 4 through 6, which charged tax evasion for 2007 through 2009 in violation of 26 U.S.C. § 7201; Counts 7 through 9, which charged failure to timely file tax returns for 2010, 2011, and 2012 in violation of 26 U.S.C. § 7203; and Count 15, which charged that Gyetvay's email

approving the statement of non-willfulness for the SFOP submission constituted wire fraud.  Dkt.261 at 1-8.

The jury returned a guilty verdict on four counts: Counts 10 and 11, which charged failure to file timely tax returns for 2013 and 2014 in violation of 26 U.S.C. § 7203; Count 12, which charged Gyetvay's SFOP submission had violated 18 U.S.C. § 1001 by falsely stating his past non-compliance was not willful; and Count 13, which charged failure to file a 2014 FBAR in violation of 31 U.S.C. §§ 5314, 5322(a).  Dkt.261 at 6-7.  The jury acquitted Gyetvay of Count 14, which charged that the 2014 FBAR constituted wire fraud.  *Id.*

### B.    Sentencing

The district court scheduled sentencing for September 21, 2023.  Dkt.269 at 40:15-16.  The PSR recommended that Gyetvay pay over $4 million in restitution. Dkt.288 (¶¶ 47-49).  It based that recommendation on the MVRA, which requires restitution for "loss" resulting from "an offense against property under [Title 18]." 18 U.S.C. § 3663A(b)(1), (c)(1)(A)(ii).  Gyetvay's only Title 18 conviction was Count 12 for making a false statement in his SFOP submission.  Dkt.288 (¶ 48); *see id.* at 29.  The PSR deemed that conviction an "offense against property" that caused the IRS to suffer "loss" of unassessed civil tax penalties.  *Id.* (¶¶ 47-48).

Gyetvay objected that Count 12 was not an "offense against property" and that Title 26 "penalties which have not been assessed by the IRS" are not "property"

7

the IRS could lose.  Dkt.288 at 75-76.  Without addressing Gyetvay's objections, the district court ordered restitution in the amount recommended by the PSR.  Dkt.304 at 44:5-9.  The district court sentenced Gyetvay to 86 months in prison.  Dkt.307 at 2.

### C.    The First Appeal

Gyetvay appealed to this Court, which reversed his convictions on Count 10 and 11 on statute of limitations grounds, affirmed his convictions on Counts 12 and 13, vacated his sentence, vacated the restitution award, and remanded for resentencing.  *United States v. Gyetvay*, 149 F.4th 1213 (11th Cir. 2025).

### D.    Resentencing

The district court scheduled resentencing for November 13, 2025.  Dkt.330.  The PSR again recommended that Gyetvay pay over $4 million in restitution under the MVRA.  Dkt.333(¶¶51-53).  The PSR also determined that the Count 12 conviction was an "offense against property" that caused the IRS to suffer "loss" of unassessed Title 26 civil penalties.  *Id.*(¶¶51-53).  The PSR did not explain how Count 12 was an offense against property.  *Id.* at 31.

Gyetvay again objected that Count 12 was not an "offense against property" and that Title 26 "penalties which have not been assessed by the IRS" are not "property" the IRS could lose.  Dkt.333 at 31 and 66-67.  Moreover, Gyetvay argued that, even if the MVRA applied, the district court lacked authority to impose

unassessed civil penalties as restitution. *Id.* at 66-67. Without overruling Gyetvay's objections to the PSR, the district court again ordered restitution in the amount recommended by the PSR. Dkt.340 at 57:11–58:6.

*    *    *    *    *

The district court sentenced Gyetvay to 70 months in prison. Dkt.338 at 2. He is currently incarcerated.

## Standards of Review

Factual determinations are reviewed for clear error, but legal interpretations and "application of the law to those facts" are examined *de novo*. *United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017). The legality of a restitution order is reviewed *de novo* while factual findings regarding the amount of restitution are reviewed for clear error. *Gyetvay*, 149 F.4th at 1243.

## SUMMARY OF ARGUMENT

**I.** The district court could not order restitution under the MVRA. Gyetvay's false-statement conviction was not an "offense against property" under 18 U.S.C. §3663A(c)(1)(A)(ii), because the district court's determination regarding Gyetvay's ***intent*** was not supported by the evidence.

**II.** The district court could not order restitution under the MVRA based on civil Title 26 penalties that the IRS might have but never assessed. Restitution seeks to compensate victims and make them whole. Allowing the government to exact

9

punitive unassessed Title 26 penalties through restitution oversteps the district court's authority.

## ARGUMENT

The district court ordered $4 million in restitution based on unassessed Title 26 penalties. The restitution order did not make the government whole, it punished Gyetvay by ordering him to pay non-compensatory penalties in violation of the MVRA.

"A district court may order restitution ***only*** as a statute authorizes." *United States v. Goldman*, 953 F.3d 1213, 1223 (11th Cir. 2020) (emphasis added). The provision of the MVRA invoked by the district court permits restitution only where the defendant is convicted of "an offense against property under this title," *i.e.*, under Title 18. *See* 18 U.S.C. §3663A(c)(1)(A)(ii); Dkt.340 at 57:11-58:6; Dkt.333(¶¶51-53 and ¶¶132-133); Dkt.338 at 6; *see, e.g.*, *United States v. Collins*, 854 F.3d 1324, 1329 (11th Cir. 2017).

Restitution aims to make crime victims "whole for their losses." *United States v. Cavallo*, 790 F.3d 1202, 1238 (11th Cir. 2015) (citing *United States v. Huff*, 509 F.3d 1240, 1249 (11th Cir. 2010); *see* 18 U.S.C. §3663A(c)(1)(B). The district court could not order restitution based on unassessed civil penalties because those penalties were non-compensatory. The purpose of those Title 26 penalties is general deterrence and to impose an additional cost or "sanction" on taxpayers who fail to

comply. Thus, the Title 26 penalties at issue are "punishment . . . as distinguished from compensation for the injured party's loss." *Black's Law Dictionary* (11th ed. 2019); *see also United States v. CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996) ("[A] tax is an enforced contribution to provide for the support of government; a penalty . . . is an exaction imposed by statute as punishment for an unlawful act.").

To order restitution under the MVRA, the district court relied on Gyetvay's conviction under Count 12 for making a false statement in his SFOP submission—the *only* Title 18 conviction. Dkt.333(¶¶51-52). The jury acquitted Gyetvay of one of the other Title 18 offenses (Count 14) which charged wire fraud relating to the 2014 FBAR. Dkt.261 at 7. And the jury failed to return a verdict with respect to the final Title 18 offense (Count 15) which charged wire fraud relating to Gyetvay's approval of the non-willfulness statement that accompanied the SFOP submission. *Id.* at 8. Count 15, along with all other counts for which the jury could not return verdict at trial, have since been dismissed with prejudice upon motion by the government. Dkt.347.

Gyetvay's conviction is not "an offense against property." In Count 12, Gyetvay was charged with falsely stating that his prior failures to file were not willful. For an offense to be "against property," property "must serve as the *object* of the offense, not simply a collateral component." *Collins*, 854 F.3d at 1331

(emphasis added).  "Incidental property loss" does not suffice.  *Id.* at 1332.  Nor does an offense "qualify as an 'offense against property' solely because it results in property damage or because someone suffers a loss at some point during its execution."  *Id.* at 1331-32.  Rather, the defendant must "***intend[]***" to "deprive a person of his property."  *Id.* at 1331 (emphasis added).  Put differently, the defendant must have the goal of causing property loss.  *Id.*; *see MSP Recovery Claims, Series LLC v. Hanover Ins. Co.*, 995 F.3d 1289, 1294 (11th Cir. 2021) (equating "object" with "ultimate goal"); *Black's Law Dictionary* (11th ed. 2019) (defining "object" as "something sought to be attained or accomplished; an end, goal or purpose").

Even if the district court properly concluded that Count 12 was an "offense against property," the district court's restitution order improperly imposed as restitution certain unassessed civil penalties under Title 26 of the United States Code.  Those Title 26 penalties cannot properly be ordered as restitution under the MVRA because: (1) the Title 26 penalties are not intended to make the victim whole for losses suffered and therefore violate the basic premise underlying the purpose of restitution under the MVRA; and (2) the MVRA, which applies only to Title 18 offenses, does not allow the district court to shoehorn unassessed Title 26 penalties into a restitution order thereby eviscerating the processes and protections in place to specifically address the assessment of those penalties.

## I.    THE MVRA DOES NOT APPLY BECAUSE COUNT 12 WAS NOT AN OFFENSE AGAINST PROPERTY

In analyzing whether an offense is against property for purposes of the MVRA, this Court focuses on the conduct underlying the offense of conviction instead of the elements of the crime. *Collins*, 854 F.3d at 1334-35. Under this analysis, the district court was required to evaluate how Gyetvay committed the crime and the facts and circumstances of the crime. *Id.* Moreover, the district court was required to determine that Gyetvay's goal in submitting the willfulness statement was property loss. But the district court could not rely on the PSR to make that finding and there was no evidence presented at trial that would support a finding that Gyetvay intended—by filing a willfulness statement—to deprive the government of property.

### A.    The District Court Could Not Rely on Findings of Fact in the PSR to Support the Restitution Order

First, a district court can only rely on ***undisputed*** findings in the PSR. *United States v. Jones*, 289 F.3d 1260, 1265-66 (11th Cir. 2002). When a defendant objects to a PSR finding—as Gyetvay did, Dkt.333 at 66-67, 78-80—the MVRA requires the district court to resolve that objection and make its own findings. *See* 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court[.]"). During resentencing Gyetvay specifically objected to the PSR restitution findings (Dkt.336 at 7-10; Dkt.333 at 66-67 and 78-80) and

specifically referenced the "detailed letter outlining all of our objections" that had been filed in response to the PSR. Dkt.340 at 4:15-11:22 and 14:6-15:1. And the district court understood Gyetvay's objections to the PSR's findings. Dkt.340 at 8:2-6 ("So it's the legal issue of -- legal factual issue of whether the false statement that forms the basis of the Count 12 conviction had as its purpose the deprivation of property to the government versus that just being a collateral consequence of making the false statement.") and 15:17-18 ("So the restitution argument has been made.").

But the district court failed to resolve Gyetvay's objections. Thus, the district court could not rely on the disputed PSR findings to determine that "the false statement was made in order to enter into the Streamlined Procedures Program" and "was for the purpose of avoiding the payment of penalties." Dkt.340 at 57:11-21.

## B.    The PSR Did Not Make Findings Necessary to Support Restitution

Second, the PSR did not find that the false statement charged in Count 12 was made with the intent to deprive the government of property. The PSR concluded only that Gyetvay's conduct "*resulted in*" avoiding penalties. Dkt.333 (¶52 and ¶132) (emphasis added). But an offense does not qualify as an offense against property "solely because it *results* in property damage." *Collins*, 854 F.3d at 1331-32 (emphasis added). Property loss must be the goal. The PSR made no findings that Gyetvay's false statement was designed to avoid penalties, and any such finding would have no foundation in the evidence. The evidence showed that Gyetvay filed

14

through SFOP because his attorneys advised him to take that approach, not because he specifically intended to avoid penalties. GX73; Dkt.264 at 224:21-227:3. The PSR merely concluded that Gyetvay's "false statements resulted in him avoiding penalties." Dkt.333 (¶¶132-133). Accordingly, even if the district court could have relied on the PSR's disputed findings, those findings were insufficient to support the restitution order.

### C.    The District Court's Findings Were Not Supported by the Evidence

Even if the district court made a finding regarding Gyetvay's intent, that finding was not supported by evidence at trial. The district court inferred that Count 12 must have been an offense against property based on the district court's rationale that it could not "think of any other reason why a person would go into -- not any non-financial reason that a person would make a false statement to get into the streamlined procedures other than to keep money for one's self that otherwise would have to be paid to the government, which qualifies as an offense against property." *See* Dkt.340 at 57:23-58:3. But the evidence at trial showed that Gyetvay filed through SFOP because his attorneys advised him to take that approach, not because he specifically intended to avoid penalties. GX73; Dkt.264 at 224:21-227:3.

Moreover, at resentencing Gyetvay explained why he entered the SFOP and agreed to the non-willfulness statement that his lawyers drafted: "I didn't make a decision on this. I mean I didn't have the expertise on the programs that I was shown.

15

And Anaford is the one that advised me, after doing the assessment of all my tax obligations, that I should enter the streamline process. And I did what they told me. And I think if they told me at that particular time that the other program was more suitable for me, I would have done that." Dkt.340 at 46:15-21.

By contrast, the only documentary evidence offered by the government in its sentencing memorandum to establish that Gyetvay intended to cause property loss was a two-page letter from Gyetvay's bank (GX65j) which merely stated that: "The streamlined program follows a different set of rules and also penalty scheme compared to the OVDP." That letter did not suggest that a taxpayer who filed under the SFOP would avoid substantial penalties. Nor did any other evidence introduced at trial or at resentencing establish Gyetvay's intent.

At most, the testimony suggests the failure to assess penalties was the "result" of Gyetvay's conduct, not the goal. *Collins*, 854 F.3d at 1331-32. Such "incidental" loss does not qualify for restitution. *Id.* The record lacks concrete facts to support the finding with respect to ***Gyetvay's*** intent. Given that "dearth of evidence," the restitution order must be vacated. *See United States v. Martin*, 803 F.3d 581, 596 (11th Cir. 2015) (vacating restitution order where the government introduced "no evidence" in support of restitution calculation); *United States v. Owanikin*, 769 F. App'x 896, 897 (11th Cir. 2019) (error to "rely[] solely on the government's arguments at the sentencing hearing—rather than evidence"); *Collins*, 854 F.3d at

1311; *Huff*, 609 F.3d at 1248-49 (vacating restitution award in the absence of district court findings).

Because there was no evidence that Gyetvay intended to deprive the government of property through the willfulness statement, Count 12 was not an "offense against property." Thus, the MVRA does not apply and the restitution order must be vacated.

## II. UNASSESSED TITLE 26 PENALTIES CANNOT FORM THE BASIS FOR RESTITUTION UNDER THE MVRA

Avoiding payment of unassessed civil Title 26 penalties is not a loss that can support restitution under the MVRA. Restitution aims to make crime victims "whole for their losses." *Cavallo*, 790 F.3d at 1238; *see* 18 U.S.C. § 3663A(c)(1)(B). It is "not designed to punish the defendant." *See Martin*, 803 F.3d at 595 (11th Cir. 2015); *Goldman*, 953 F.3d at 1223 (same); *United States v. Bane*, 720 F.3d 818, 828 (11th Cir. 2013). Penalties, by contrast, are "punishment . . . as distinguished from compensation for the injured party's loss." *Black's Law Dictionary* (11th ed. 2019); *see also CF & I Fabricators of Utah, Inc.*, 518 U.S. at 224 ("[A] tax is an enforced contribution to provide for the support of government; a penalty . . . is an exaction imposed by statute as punishment for an unlawful act.").

The United States has a Tax Court in which to adjudicate civil Title 26 penalty assessments. Allowing the government to exact payment of unassessed penalties through restitution—rather than through the statutorily prescribed processes, found

17

in Title 26, for imposing and collecting those penalties—impermissibly transforms restitution under the MVRA from a restorative measure into a punitive one. *See Collins*, 854 F.3d at 1329 ("The 'primary and overarching purpose' of the MVRA, enacted in 1996, is to 'make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being.'"); *see also* S. Rep. No. 104-179, at 12-14 (1995), *reprinted in* 1996 U.S.C.C.A.N. 924, 925-27 (describing MVRA's primary goal as "to ensure that the loss to crime victims is recognized, and that they receive the restitution that they are due.").

Late-filing and late-payment penalties are not compensatory, they serve the punitive goal of general deterrence, "ensur[ing] timely filing of tax returns." *United States v. Boyle*, 469 U.S. 241, 245 (1985). Indeed, the penalties apply only when late filing or late payment did not result from "reasonable cause." 26 U.S.C. § 6651(a). If the penalties were compensatory, taxpayer intent would be irrelevant.[1] The government has, in other contexts, recognized as much, explaining that "civil penalties generally should not be included in restitution because they are not an

---

[1] By contrast, interest on late filing or underpayments is due without regard to fault, 26 U.S.C. § 6601(a), and is "merely compensatory," *Vick v. Phinney*, 414 F.2d 444, 448 (5th Cir. 1969).

aspect of the victim's actual loss."[2]  Furthermore, the IRS has explained that the purpose of the penalties is to encourage voluntary compliance by "[p]roviding monetary **sanctions** against taxpayers who do not meet the standard."  *See* Internal Revenue Manual ("I.R.M."), I.R.M. § 20.1.1.2 (2017) (emphasis added); *see also* I.R.M. § 20.1.2.1.1 (2025) ("Taxpayers who fail to file and/or pay as required are subject to penalties.  The purpose of these penalties is to encourage voluntary compliance with the requirements for filing and paying by imposing an avoidable cost on non-compliant taxpayers.").

Moreover, the sentencing guidelines do not support inclusion of penalties in the determination of loss—which is what restitution under the MVRA is supposed to compensate victims for.  *Collins*, 854 F.3d at 1329 ("The 'primary and overarching purpose' of the MVRA … is to 'make victims of crime whole, to fully compensate these victims for their **losses** and to restore these victims to their original state of well-being.'") (emphasis added).  The United States Sentencing Commission guidelines recognize that penalties and interest are not properly included in the calculation of loss.  For example, Application Note 3 to §2B1.1 specifically **excludes**

---

[2] Elissa Hart-Mahan & Hannah Cook, *Restitution in Criminal Tax Cases: Common Pitfalls and Practical Strategies*, 71 Dep't of Just. J. of Fed. L. & Prac. 1, 6-7 (2023). While the government has recognized an "exception" to that "general rule" for "willful failure to pay under 26 U.S.C. § 7203" because "the object of the offense involves the failure to pay civil penalties," *id*., Mr. Gyetvay was never convicted of failing to pay any tax or penalty.

penalties from the determination of loss: "(D) Exclusions from Loss.—Loss shall not include the following: (i) Interest of any kind, finance charges, late fees, penalties, amounts based on an agreed-upon return or rate of return, or other similar costs." United States Sentencing Commission, *Guidelines Manual*, §2B1.1 Application Note 3 (Nov. 2021); *see also* Dkt.333 at 73-76 and 78-80. And the guidelines for calculating "tax loss" similarly exclude unassessed civil penalties[3] in computing loss: "tax loss does not include interest or penalties, except in willful evasion of payment cases under 26 U.S.C. §7201 and willful failure to pay cases under 26 U.S.C. §7203." United States Sentencing Commission, *Guidelines Manual*, §2T1.1 Application Note 1 (Nov. 2021).

There are numerous protections and procedures in place to ensure that Title 26 penalties are assessed in a timely, accurate, and fair manner. In general, the IRS must assess additional tax and propose penalties no later than three years after either a return is filed or the return's due date. *See* 26 U.S.C. §6501. Moreover, if the IRS asserts additional tax or proposes civil penalties, the IRS is generally required to

---

[3] The penalties at issue in this case are not a tax. The Internal Revenue Code itself calls the payments a "penalty." *See* 26 U.S.C. §6651(b) ("Penalty imposed on net amount due"); *id.* §6651(d) ("Increase in penalty"); *id.* §6651(f) ("Increase in penalty"); *id.* §6651(h) ("Limitation on penalty"). So do congressional committees (*see, e.g.*, S. Rep. 97-494, at 254-64, 272-81 (1982)); the Supreme Court (*see, e.g.*, *Boyle*, 469 U.S. at 245); the Tax Court (*see, e.g.*, *Topsnik v. Comm'r*, 143 T.C. 240, 264 (2014) ("late-filing penalty")); and the prosecutors and witnesses in this case (*see, e.g.*, Dkt.264 at 209:21-210:1; Dkt.265 at 190:23-24; *id.* at 191:4-10; *id.* at 222:14-21).

issue a notice of deficiency which allows judicial review in the Tax Court. *See* 26 U.S.C. §§6212 and 6213. In the Tax Court, the taxpayer can argue that reasonable cause excused the penalty or that the IRS's imposition of the penalty violated procedural safeguards. *See e.g., Padda v. Comm'r*, T.C. Memo 2020-154, *21-22 (2020) ("reasonable cause excusing a failure to timely file exists if the taxpayer exercised ordinary business care and prudence but nevertheless was unable to file the return by the deadline."); 26 U.S.C. §6751 (imposing procedural requirements prior to the assessment of certain penalties). Moreover, in the civil examination context, the IRS allows taxpayers to request administrative relief from penalties where reasonable cause exists. *See* I.R.M. §20.1.1.3 (2020). In this case, the district court's restitution order imposed unassessed civil penalties without following any of the procedural safeguards set forth in Title 26 and the I.R.M.

By allowing penalties and the interest on those penalties to form the basis for the restitution order, the district court did not make the government whole. Gyetvay had already made the government whole when he paid the tax and interest due and owing to the government as part of his SFOP submission. Rather, by imposing the unassessed civil penalties and interest on those penalties in this case, the district court sought to punish Gyetvay and give the government $4 million more than was otherwise required to make the government whole. Accordingly, the restitution order was improper under the MVRA.

**III.  CONCLUSION**

The Court should vacate the judgment below.

March 13, 2026                    Respectfully submitted,

**/s/ Matthew J. Mueller**
Matthew J. Mueller, FBN: 047366
*Counsel of Record*
FOGARTY MUELLER HARRIS, PLLC
501 E. Kennedy Blvd., Suite 1030
Tampa, Florida 33602
Tel: 813-682-1730
Fax: 813-682-1731
Email: matt@fmhlegal.com

*Counsel for Defendant-Appellant Mark A. Gyetvay*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

*Check the appropriate box in section 1, and check the box in section 2.*

**1.     Type-Volume**

☐     This document complies with the word limit of FRAP
       because, excluding the parts of the document exempted by FRAP 32(f) and
                                                    , this document contains
                           words.


       **or**

☐     This brief complies with the line limit of FRAP                         because,
       excluding the parts of the brief exempted by FRAP 32(f) and
                                              , this brief uses a monospaced
       typeface and  contains                               lines of text.


**2.     Typeface and Type-Style**

☐     This document complies with the typeface requirements of FRAP 32(a)(5) and the
       type-style requirements of FRAP 32(a)(6).




(s)_____

Attorney for _____

Dated: _____

Rev.: 12/16

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2026, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.  I certify that all participants in this case are registered CM/ECF users.


Dated: March 13, 2026                    /s/ Matthew J. Mueller
                                         Matthew J. Mueller
                                         *Attorney for Mark A. Gyetvay*